UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRENDA GRISSO,

                Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

                Defendant.

CASE NO. 10cv5368  JRC

ORDER

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. (See also Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, ECF No. 3; Consent to Proceed Before a United States Magistrate Judge, ECF No. 12.) This matter has been fully briefed. (See ECF Nos. 13, 14, 15.)

After considering and reviewing the record, the undersigned concludes that the ALJ did not commit legal error when evaluating the evidence supplied by Dr. George H. Krick and physical therapist Ms. Susan Mack, nor during the consideration of plaintiff's testimony and credibility. The undersigned furthermore concludes that the ALJ's ultimate finding regarding plaintiff's disability is supported by substantial evidence in the record. Defendant's decision on this matter therefore is AFFIRMED and plaintiff's complaint is DISMISSED.

ORDER - 1

BACKGROUND

Plaintiff was born on July 6, 1952 (Tr. 108). She graduated from high school, and has an Associate's degree from Tacoma Community College in nursing (Tr. 33). She was an RN from 1994 until May 12, 2006 (Tr. 33-34). She worked as a "tower nurse," i.e., "floor nurse, medical - surgical" at Saint Joe's Hospital, and then worked with Franciscan Hospice (Tr. 34).

PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits on December 26, 2006 (Tr. 108-10). Her application was denied initially and on reconsideration (Tr. 65-66, 68-70). Plaintiff requested a hearing (Tr. 73), which was held on April 8, 2009 before Administrative Law Judge Mattie Harvin-Woode (hereinafter "the ALJ") (Tr. 28-62). Plaintiff testified and was represented by counsel (Tr. 28, 30, 32-55). Dr. Susan M. Bachelder Steward, Ph.D., a vocational expert, also testified at plaintiff's hearing (Tr. 55-61; see also Tr. 105-07).

On May 12, 2009, the ALJ issued a written decision, and made multiple findings (Tr. 14-27). The ALJ found that plaintiff met the insured status and had not engaged in substantial gainful activity since December 31, 2005 (Tr. 19). The ALJ found that plaintiff had the severe impairments of fibromyalgia, residuals from a lumbar spine surgery, and depression (id.). The ALJ found that plaintiff had the Residual Functional Capacity to perform light work, except that "she could only occasionally climb ramps or stairs, kneel, crawl, stoop, crouch, or reach overhead. She could not work with concentrated exposure to the cold and she would not be off task more than 10% of the time" (Tr. 23). Thereafter, the ALJ concluded that plaintiff was not under a disability as defined by the Social Security Act (Tr. 26, 27).

On May 6, 2010, the Appeals Council denied plaintiff's request for review, making the May 12, 2009 written decision by the ALJ the final decision subject to judicial review (Tr. 1-5).

1  See 20 C.F.R. § 404.981. On May 25, 2010, plaintiff filed the underlying complaint, seeking
2  review of the May 12, 2009 written decision by the ALJ (see ECF No. 1).

3  In her opening brief, plaintiff contends that the ALJ "improperly ignored evidence" in
4  making her Residual Functional Capacity determination, including (1) medical evidence
5  provided by treating physician Dr. George H. Krick, (2) evidence from an "other medical
6  source," physical therapist Ms. Susan Mack, and (3) plaintiff's testimony (ECF No. 13, pp. 7-
7  21); (4) improperly determined that plaintiff was capable of performing occupations existing in
8  significant numbers in the national economy (id. at 22-24); and, (5) that this Court should order
9  that plaintiff be awarded Social Security disability benefits (id. at 24-25).

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (*citing* Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by

substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see Richardson v. Perales, 402 U.S. 389, 401 (1971).

According to the Ninth Circuit, "the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (*citing* Magallenes, supra, 881 F.2d at 750). It is not the job of the court to reweigh the evidence: If the evidence "is susceptible to more than one rational interpretation," including one that supports the decision of the Administrative Law Judge, ("ALJ"), the ALJ's conclusion "must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) (*citing* Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599, 601 (9th Cir. 1999)); see also Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005) (*citing* Magallanes, supra, 881 F.2d at 750); Andrews, supra, 53 F.3d at 1039-40.

## DISCUSSION

1. The ALJ properly evaluated the medical evidence.

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting* Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing* Calhoun v. Bailar, 626 F.2d 145, 150 (9th Cir. 1980))). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this

responsibility." Morgan, supra, 169 F.3d at 603. The ALJ also may draw inferences "logically flowing from the evidence." Sample, supra, 694 F.2d at 642 (citations omitted).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (*citing* Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)). However, "[t]he ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) (*quoting* Magallanes, supra, 881 F.2d at 751). An ALJ need not accept an opinion of a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings or by the record as a whole. Batson, supra, 359 F.3d at 1195 (*citing* Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)); see also Thomas, supra, 278 F.3d at 957 (citation omitted).

A non-examining physician's opinion may not constitute substantial evidence by itself. Lester, supra, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan, supra, 242 F.3d at 1149 (*citing* Magallanes, supra, 881 F.2d at 752).

If a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, supra, 81 F.3d at 830-31 (*citing* Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (*citing* Magallanes, supra, 881 F.2d at 751).

Regarding the medical evidence, plaintiff specifically contends that the ALJ did not evaluate properly the opinion by treating physician, Dr. George H. Krick, M.D., (hereinafter "Dr. Krick"). However, although Dr. Krick's opinion was contradicted by the opinion by Mr. Dick Eayrs (see Tr. 21, 235-42), the ALJ credited and relied on much of the medical evidence supplied by Dr. Krick (see Tr. 19-25). For example, regarding plaintiff's subjective reports, the ALJ noted plaintiff's subjective reports of significant pain in Dr. Krick's treatment report (Tr. 20 (*citing* "Exhibit 7F, p. 4", i.e., Tr. 280)). However, also from Dr. Krick's report, the ALJ noted plaintiff's subjective statement that "she hasn't felt this good in general for 'years'" (see Tr. 20; see also Tr. 278). Regarding objective observations, the ALJ noted Dr. Krick's observations following objective evaluation of "no joint synovitis, effusion or edema," and normal gait (Tr. 20).

In addition, the ALJ clearly relied on Dr. Krick's conclusion regarding plaintiff's "classic fibromyalgia syndrome with paired tender points in a symmetrical fashion with a poor sleep pattern, chronic pain, fatigue and poor stamina as well as lumbar spine pain." (Tr. 19). The ALJ also noted Dr. Krick's advice that plaintiff participate in a regular aerobic exercise program (id.). Finally, the ALJ clearly relied on Dr. Krick's conclusion that plaintiff's "epicondylitis was resolved" (Tr. 20-21).

However, the ALJ also discussed a questionnaire completed by Ms. Teresa Unkrur, a physician assistant for Dr. Krick (Tr. 21). Among multiple conclusions discussed by the ALJ in this questionnaire, the ALJ noted the indication in the questionnaire that plaintiff "was incapable of even low stress and that [plaintiff's] pain would frequently to constantly interfere with her attention and concentration needed to perform even simple tasks" (Tr. 21-22). Subsequently, the ALJ noted the inconsistency between this conclusion in the questionnaire completed by Dr.

1  Krick's assistant with Dr. Krick's own assessments and observations: "there are no mentions of
2  concentration problems in the treatment notes from Dr. Krick" (Tr. 24 (see also Tr. 23: "No
3  doctor has indicated that she has any problems in concentration in their treatment notes")). In this
4  context, the ALJ also noted that plaintiff "testified that she is responsible for paying the
5  household bills[,] [ ] has been the caregiver while her husband recovers from surgery[,] [and] is
6  able to do sewing projects and help with house remodeling" (id.). The ALJ also noted that
7  plaintiff "denied problems with attention" in her Function Report (id.; see also Tr. 152 (also not
8  indicating problems with concentration)). The ALJ sufficiently summarized the facts and
9  conflicting evidence, here, regarding this questionnaire, and also in the context of a similar
10 conclusion by Dr. Sabrina A. Benjamin, M.D[1]. (see Tr. 24-25; 257-262).

The ALJ set out a sufficiently detailed summary of the facts and clinical evidence
regarding this particular issue, interpreted said facts and evidence, and made findings. See
Reddick, supra, 157 F.3d at 725 (*citing* Magallanes, supra, 881 F.2d at 751). Based on this, and
based on a review of the relevant record, to the extent that the ALJ did not credit fully the
questionnaire completed by Dr. Krick's physician assistant, this determination by the ALJ was
proper, as the ALJ provided "specific and legitimate reasons supported by substantial evidence in
the record." Lester, supra, 81 F.3d at 830-31.

On January 5, 2009, Dr. Krick sent a letter to plaintiff's attorney regarding plaintiff's
claim of disability (Tr. 282). This letter included the following:

---

[1] Plaintiff does not argue specifically that the ALJ erred in evaluating the medical opinion of Dr. Sabrina A. Benjamin, M.D. The Court finds legitimate the ALJ's conclusion that Dr. Benjamin, who indicated that "she had just started treating [plaintiff] that month" (Tr. 21), and from whom plaintiff submitted "no treatment records" (Tr. 24), based her assessment of plaintiff's limitations "on what [plaintiff] told her" (Tr. 24). Based on this reason, and because of the other legitimate reasons included by the ALJ (see Tr. 24-25), the Court finds the ALJ's evaluation of Dr. Benjamin's opinion to be without legal error. Lester, supra, 81 F.3d at 830-31;see also Morgan, supra, 169 F.3d at 602 (*quoting* Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989) (*citing* Brawner v. Sec. HHS, 839 F.2d 432, 433-34 (9th Cir. 1988))).

ORDER - 7

1
2
3
4
5

> [Plaintiff] has carried a diagnosis of Fibromyalgia Syndrome since her initial new patient evaluation/consultation of January 5, 2004, however *she advised me* she had left her employment as an RN approximately May 2006 due to her ongoing FMS, *therefore* I do believe she was symptomatic in July 2007, secondary to her underlying FMS, and I do feel that it is reasonable to believe that she was not gainfully employed in 7/2007 due to her FMS symptoms at that time.

6  (Tr. 282 (emphases added)).

7  The ALJ characterized the letter as "much more vague in its conclusions than the
8  questionnaires completed by doctors who have not regularly treated [plaintiff] or who are not
9  acceptable medical sources" (Tr. 25). The Court notes that this observation is specific to Dr.
10 Krick's letter, and is not directed to Dr. Krick's treatment notes (see id.). The Court concludes
11 that this finding by the ALJ is supported by the substantial evidence in the record.
12
13 In addition, more importantly, the Court observes that the ALJ correctly noted that Dr.
14 Krick "did not state that [plaintiff] was unable to perform any work" (Tr. 25). The ALJ also
15 concluded that Dr. Krick's treatment notes suggested that plaintiff's pain "has responded to
16 medication and that she has repeatedly been told to exercise and she has completed physical
17 therapy after having made her goals for therapy" (id.). The Court concludes that these findings
18 also are supported by substantial evidence in the record (see, e.g., Tr. 223 ("She has been
19 reporting more often pain-free"); Tr. 224 (goals met of "decreasing symptoms, being able to
20 tolerate ADL's right and left lower extremity with symptoms consistently not greater than 6/10
21 and being able to have improved independent symptoms control"); Tr. 278 ("less burning pain,"
22 "gradually return to regular activities and exercise program . . . states has joined YMCA in
23 Gig Harbor"); Tr. 290 ("good relief [from cortisone injection] by time left office"); Tr. 291 ("Her
24 meds remain stable and seem fairly effective"; "it is def. better following the R lateral epicondyle
25
26

injection last week"); Tr. 292 ("She continues to feel the Voltaren 100mg qd is working well for her" )).

Dr. Krick opined that it is "reasonable to believe that [plaintiff] was not gainfully employed in 7/2007 due to her FMS symptoms at that time" (Tr. 282). This opinion does not exclude the possibility that it may also be reasonable to believe that plaintiff was not gainfully employed during the month of July, 2007 because she wanted to pursue other interests, such as travel (see also infra, section 3, plaintiff's testimony and credibility). Dr. Krick did not opine specifically that plaintiff was not capable of performing any work: not in this letter, nor, does it appear that he so opined in his treatment notes. It is not the job of the court to reweigh the evidence: If the evidence is susceptible to more than one rational interpretation, including one that supports the decision of the Commissioner, the Commissioner's conclusion must be upheld. Thomas, supra, 278 F.3d at 954.

Therefore, based on a review of the relevant record, the Court concludes that the ALJ's determination that this letter by Dr. Krick did not compel a finding that plaintiff was not capable of performing any work was not legal error. For all of the above stated reasons, and based on a review of the relevant record, the Court concludes that the ALJ properly evaluated the medical evidence.

2. The ALJ properly evaluated the evidence of the Functional Capacity Evaluation by physical therapist Ms. Susan Mack.

Some sources, such as the physical therapists, are "other sources" or other medical sources, and are not considered "acceptable medical sources" pursuant to the regulations. See Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010) (citing 20 C.F.R. §

404.1513(a), (d)); see also 20 C.F.R. § 404.1513(d)(1). The ALJ "may expressly disregard lay testimony [from such "other sources"] if the ALJ 'gives [germane] reasons . . . for doing so'". Turner, supra, 613 F.3d at 1224 (*quoting* Lewis, supra, 236 F.3d at 511); see also 20 C.F.R. § 404.1513(d)(3).

Here, physical therapist Ms. Susan Mack (hereinafter "Ms. Mack") conducted a two-day Functional Capacity Evaluation on November 11-12, 2008 (Tr. 245-50). The ALJ noted that Ms. Mack "concluded that [plaintiff] did not demonstrate the tolerance to return to work and that she could not work an eight hour day" (Tr. 21). The ALJ also included Ms. Mack's observations of "visible stiffness, shaking and muscle spasm as testing progressed (internal citation to Exhibit 6F, pp. 1-7)" (Tr. 21). The Court notes that the Functional Capacity Evaluation also indicated limitations greater than those found in plaintiff Residual Functional Capacity, as assessed by the ALJ in the April 18, 2009 written decision, as it indicated plaintiff was able to crawl and kneel, or lift and carry 10 pounds, for no more than 1-5 percent of an eight hour workday (Tr. 249-50).

Regarding the evidence supplied by Ms. Mack, the ALJ noted properly that Ms. Mack is "not an acceptable medical source under the regulation" (Tr. 24). See Turner, supra, 613 F.3d at 1223-24; see also 20 C.F.R. § 404.1513(a), (d). The ALJ concluded that there "are several problems with this evaluation" (id.). The first problem indicated by the ALJ was the fact that Ms. Mack "noted that [plaintiff] developed muscle spasm and shaking after she started becoming fatigued, but this is not a symptom[] reported by [plaintiff]'s treating physician" (Tr. 24). The Court observes that Ms. Mack's observations regarding muscle spasms and shaking do not appear to be supported by any treatment notes by plaintiff's long term treating physician Dr. Krick. The second problem indicated by the ALJ with Ms. Mack's report was that she indicated plaintiff was limited to lifting not more than ten pounds, but that plaintiff testified that she could

lift her twenty-pound grandchild (Tr. 24 (see also Tr. 44)). The Court observes that plaintiff's testimony reveals that she indicated an ability to lift her twenty-pound grandchild from the floor to a seated position (Tr. 44), and also indicated that she lifts grocery bags of "ten, twelve pounds . . . . fifteen pounds maybe" (Tr. 45). The third reason supplied by the ALJ regarding "problems" with Ms. Mack's Functional Capacity Evaluation was that Ms. Mack indicated that plaintiff could "only sit 12 minutes, but as noted above she is able to go on long road trips (internal citation to Exhibit 6F, pp. 1-8)" (Tr. 24).

Although the Court notes that plaintiff testified that she travels in a recreational vehicle in order to allow for movement while taking road trips, nevertheless, the ALJ noted a potential inconsistency between Ms. Mack's evaluation and the treatment notes by treating physician Dr. Krick, and also noted that Ms. Mack included somewhat greater limitation than that testified to by plaintiff. Therefore, the Court concludes that the ALJ properly rejected evidence from Ms. Mack's Functional Capacity Evaluation by providing germane reason for doing so. See Turner, supra, 613 F.3d at 1224.

3. The ALJ properly evaluated Plaintiff's testimony and credibility.

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. § 423(d)(5)(A)). Even if a claimant "has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment." Fair, supra, 885 F.2d at 603. Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted); see also Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for

truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). "[I]f a claimant 'is able to spend a *substantial part* of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.'" Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (*quoting* Morgan, 169 F.3d at 600) (emphasis added in Vertigan).

The determination of whether to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; Smolen, 80 F.3d at 1281 (*citing* Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); Smolen, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing* Cotton, supra, 799 F.2d at 1407). Absent affirmative evidence that the claimant is malingering, the ALJ must provide specific "clear and convincing" reasons for rejecting the claimant's testimony. Smolen, supra,80 F.3d at 1283-84; Reddick, supra, 157 F.3d at 722 (*citing* Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996); Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

The record contains affirmative evidence that plaintiff is not a malingerer (see, e.g., Tr. 252, 258). Therefore, the ALJ must provide "clear and convincing" reason to reject plaintiff's testimony. See Smolen, supra,80 F.3d at 1283-84.

|   |   |
|---|---|
| 1 | The ALJ noted that plaintiff was discharged from physical therapy on February 16, 2006 |
| 2 | (Tr. 20). The ALJ noted that plaintiff's physical therapy report indicates that plaintiff often was |
| 3 | pain free (id.) The ALJ discussed various activities of plaintiff, and observed that plaintiff, in |
| 4 | April, 2006, reported that she had just returned from an extensive trip in her motor home (id.). |

The ALJ noted that plaintiff was discharged from physical therapy on February 16, 2006 (Tr. 20). The ALJ noted that plaintiff's physical therapy report indicates that plaintiff often was pain free (id.) The ALJ discussed various activities of plaintiff, and observed that plaintiff, in April, 2006, reported that she had just returned from an extensive trip in her motor home (id.). The ALJ indicates that plaintiff had indicated that she had been doing a lot of remodeling around the house in October, 2006, which had made plaintiff sore (id.) The ALJ noted that plaintiff reported an intention to travel to Arizona between February and April, 2007, and that plaintiff indicated that she felt much better when she was in Arizona (id.). The ALJ noted plaintiff's self-report of no problems with attention (id.).

The ALJ noted that in May, 2007, plaintiff reported that she felt that her fibromyalgia was being managed fairly well, although plaintiff still reported significant pain (id.) The ALJ relied on plaintiff's self-report in October, 2007 that she had not felt as good in years, and that her pain was tolerable (id.) The ALJ mentions more than once the repeated objective observation of plaintiff's treating physician, Dr. Krick, that plaintiff did not suffer from "joint synovitis," and his repeated observation of normal gait (id.).

The ALJ noted that in January, 2008, plaintiff reported that she was leaving for warmer climates, to return in April, 2008 (Tr. 21). The ALJ also noted the report that plaintiff bruised her hand with a hammer in May, 2008 (id.; see also Tr. 293). The ALJ noted plaintiff's report on September 30, 2008 that she was feeling much better with new medication, although the ALJ also noted plaintiff's opinion that "there was no way she could work for eight hours at one time" (id.).

The ALJ noted that plaintiff's treating physician indicated that although plaintiff "carried the diagnosis of fibromyalgia since he first saw [her] in January of 2004, [] she did not leave her

job until May of 2006" (Tr. 22). The ALJ noted that on March 10, 2009, plaintiff reported that she may be suffering increased pain in her shoulder due to her assisting her husband with his recovery from surgery (id.) The ALJ extensively discussed plaintiff's testimony at her administrative hearing (see id.).

The ALJ provided various reasons to discount plaintiff's testimony regarding the extent of her limitations (see Tr. 24-25). The majority of the support given by the ALJ for the credibility finding is in the following paragraph:

> [Plaintiff] has testified that she could not sit more than ten to fifteen minutes at a time, but she also has stated that she travels for days in her motor home. She reports constant chronic pain, but treatment notes show that she tells her doctor that her pain is responding to medication. She indicates that she is physically exhausted, but the record shows that she travels for months every year, she physically helped with home remodeling, she took over the care of a troubled grandchild, she walks every day when it does not rain, and she belongs to the YMCA for exercise. She is able to prepare simple meals and care for her husband when his is recovering from surgery. I note that the claimant left her job at about the same time that she and her husband took a several month trip to New Orleans and other places in their motor home. This suggests that [plaintiff] may have left work to accommodate her desire to travel and not because her pain prevented her from working. [Plaintiff] has had back pain and fibromyalgia for years prior to her leaving work. Treatment notes do not indicate that it worsened in any significant way when she stopped working.

(Tr. 24). The reasons given by the ALJ in support of the credibility finding can be summarized as follows: (1) inconsistencies between plaintiff's testimony and her reported daily activities, (2) inconsistencies between plaintiff's testimony and her subjective reports to her medical providers, (3) a potential alternative motive to quit working other than disability, and (4) that plaintiff worked for years with fibromyalgia, and treatment notes do not indicate that her symptoms "worsened in any significant way when she stopped working" (Tr. 24).

The Court notes that not every one of the reasons offered by the ALJ in support of the adverse credibility determination is clear and convincing. However, in total, when considered in

light of the substantial evidence in the record, the Court concludes that the ALJ provided "clear and convincing" reason to reject plaintiff's testimony. See Smolen, supra, 80 F.3d at 1283-84. The ALJ found an inconsistency between plaintiff's testimony regarding her level and persistence of pain, with her reports to her doctors that her pain was manageable, "tolerable," or better with specific medications, and also with plaintiff's report from her physical therapy that she "has been reporting more often pain-free." (see Tr. 207, 223, 278, 280). The ALJ found that plaintiff "may have left work to accommodate her desire to travel," and, although this finding is not proven, it is a finding with substantial support in the record (Tr. 24). Finally, the ALJ noted that plaintiff's treatment notes do not reflect any worsening of symptoms from the time during which plaintiff was engaged in substantial gainful activity to the time during which plaintiff stopped working. Again, although this is not a finding that is proven by the record, it is a finding that is supported by substantial evidence in the record. See Magallanes, supra, 881 F.2d at 750 ("Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion'").

For the aforesaid reasons, the Court concludes that the ALJ evaluated properly the plaintiff's testimony and credibility.

4. The ALJ properly determined that plaintiff was capable of performing occupations existing in significant numbers in the national economy.

Plaintiff contends that the hypothetical given by the ALJ to the vocational expert did not account for all of plaintiff's limitations (ECF No. 13, pp. 22-24). The evidence offered in support of this contention by plaintiff is Ms. Mack's Functional Capacities Evaluation, and plaintiff's reports and testimony. The Court already has found proper the ALJ's evaluation of Ms. Mack's

Functional Capacities Evaluation (see supra section 2), as well as the ALJ's evaluation of plaintiff's testimony and credibility (see supra section 3).

As the ALJ properly evaluated the medical and other evidence in formulating plaintiff's Residual Functional Capacity, and as the hypothetical was consistent with this formulation, the Court concludes that the hypothetical given by the ALJ to the vocational expert properly accounted for all of plaintiff's limitations. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175-76 (9th Cir. 2008) (rejecting plaintiff's argument that the ALJ's hypothetical was incomplete where plaintiff "simply restates her argument that the ALJ's RFC finding did not account for all her limitations because the ALJ improperly discounted her testimony and the testimony of medical experts"). The vocational expert testified that an individual with such a capacity could perform certain occupations existing in significant numbers in the national economy (Tr. 57-58), Therefore, the Court concludes that the ALJ properly determined that plaintiff was capable of performing occupations existing in significant numbers in the national economy.

5. Plaintiff should not be awarded benefits, as this case should be AFFIRMED.

Although plaintiff requests a direct award of benefits, plaintiff has not demonstrated that the ALJ committed legal error, or that the written decision by the ALJ was not based on substantial evidence in the record as a whole. Therefore, the written decision by the ALJ should be affirmed. See Bayliss, supra, 427 F.3d at 1214 n.1.

CONCLUSION

After considering and reviewing the record, the undersigned concludes that the ALJ did not commit legal error when evaluating the evidence supplied by Dr. George H. Krick and physical therapist Susan Mack. In addition, the ALJ properly evaluated plaintiff's testimony and credibility. The ALJ's conclusion that plaintiff was not under a disability as defined by the Act is

ORDER - 16

1 supported by substantial evidence in the record. Defendant's decision on this matter therefore is

2 AFFIRMED and

3     IT IS HEREBY ORDERED that plaintiff's complaint be DISMISSED.

4     Dated this 21st day of April, 2011.

*[signature]*

J. Richard Creatura
United States Magistrate Judge